**BURCHAM, Plaintiff-Appellant, v. CONEY ISLAND, INC.,. Defendant-Appellee.**

Ohio Appeals, First District, Hamilton County.

No. 7170. Decided November 21, 1949.

John M. McCaslin, Jr., Cincinnati, for plaintiff-appellant.
Rendigs & Fry, Robert M. Dennis, Cincinnati, for defendant-appellee.

## OPINION

By ROSS, PJ.:

This is an appeal from a judgment of the Court of Common Pleas of Hamilton County, in which a judgment of the Municipal Court of Cincinnati for the plaintiff was reversed on the ground that such judgment of the Municipal Court of Cincinnati was against the manifest weight of the evidence.

The Court of Common Pleas in its judgment then proceeded to enter final judgment for the defendant.

This latter action of the Common Pleas Court can only be sustained if—

(1) No cause of action was alleged or shown to exist by some substantial evidence, or

(2) That the defendant sustained in this case the defense of contributory negligence by uncontroverted evidence.

If this latter action of the Court of Common Pleas can be sustained on either of these grounds, then its action upon the weight of the evidence need not be considered.

The case was tried to the court without a jury.

In the Bill of Particulars the plaintiff alleges that the defendant "operates an amusement park with a parking lot adjacent thereto" that "he delivered his motorcycle to defendant's agents for the purpose of keeping it while plaintiff was abent in the amusement park," that plaintiff paid a consideration of ten cents therefor, that upon his return to the parking lot he demanded his motorcycle and the defendant refused or failed to return it to him. Judgment is prayed for in the amount of $750.00.

By stipulation, the value of the motorcycle was agreed to be $650.00, and this was the amount of the judgment rendered against the defendant.

In effect, the defense was a general denial.

The evidence must be construed most favorably to plaintiff upon consideration of the right of the Court of Common Pleas to render final judgment.

Plaintiff, the only witness in his behalf, testified that he drove in the park, paid ten cents admission and ten cents for the motorcycle and "we were motioned down the fence," that he drove the motorcycle down the fence and parked there "and as we were going by I asked the cop or the policeman if he would watch the motorcycles and he said yes, as he had a number of times before and we went on into the park and watched the fireworks and we came back and I couldn't see my motorcycle, and I went up to the cop and asked where my motorcycle was, and he said two fellows rode out on the motorcycle before; and I asked him if he seen the motorcycle and if he got down close to look. He said no—he just noticed two motorcycles go out."

It appears from the undisputed evidence that the "cop" is employed by the amusement company to preserve order in the amusement park, that he is stationed at a point constituting the entrance from the amusement park to the parking lot which is capable of accommodating one thousand automobiles and fifteen motorcycles, that a small area is set apart for the latter, that no ticket or receipt is given for any vehicle and no specific spot in the area is allotted to any vehicle, that owners of automobiles or motorcycles may lock their vehicles or not, as they choose, that plaintiff's motorcycle could not be locked, because the ignition lock was broken, but he could have rendered it useless as a vehicle by removing a part of the mechanism, but that he took no precaution of any kind to protect it against theft other than to ask the "cop" to watch it.

The undisputed evidence further shows that no employe of the defendant was authorized in any way to assume responsibility for any vehicle and had no authority to do anything except to designate the general areas in which motor vehicles could be parked by their owners.

The plaintiff testified that the park policemen had in the past several times agreed to "watch the plaintiff's motorcycle as he did in the instant case."

From the evidence it is clear that such policeman was in a different class from the regular parking lot attendants. He was dressed in a different manner, and, although stationed near the entrance from the amusement park to the parking lot, took no part in the parking except to indicate the general locality in which motorcycles were to be placed. The plaintiff stated that he knew where this area was located, having placed his motorcycle there on previous occasions, and

that he chose the particular spot in which to park it.

The plaintiff stated "The lock was broke. I could have fixed it so it couldn't run, but I didn't have any idea it would be stolen out of the parking lot."

In view of this statement, it is strange why he should have asked the "cop" to watch it. The park policeman denies he was so requested. From the record, outside of a mere wave of the hand toward the area set aside for motor vehicles by a park policeman as distinguished from a parking lot attendant, stationed at the entrance to the parking lot from the amusement park, there is not the slightest indication that the policeman had anything to do with the parking of any motorcycle. It must have been evident to any reasonable person that he had no connection with the parking lot. The plaintiff put his motorcycle where he wanted to in the general area, and he used no precaution of any nature to prevent its theft. It was **after** he had so deposited the motorcycle and left the parking lot that he **requested** the amusement park policeman to "watch" it. It must be considered that under these circumstances that if he did request the park policeman to "watch" his motorcycle as distinguished from fifteen others, that the acquiescence of the policeman must be considered as a personal favor to the plaintiff and that there was not the slightest foundation, based upon the conduct of the defendant or its employes, justifying the conclusion that such agreement by the policeman was within the scope of his employment. All the evidence points to the contrary conclusion.

Certainly the plaintiff had no reasonable ground to suppose that the park policeman would devote his entire time in guarding the safety of the plaintiff's motorcycle in total disregard of his other obvious duties. Just what the plaintiff expected by the use of the word "watch" is not clear.

There is no evidence to indicate either a definite contract of bailment as alleged by plaintiff in his bill of particulars, or the existence of acts or conduct upon the part of the defendant or its employes justifying a reasonable person in believing that such an obligation of bailment was assumed.

When the owner of a motor vehicle drives it into a parking lot, he must be aware that more than one relationship between the operator and himself may be created. The owner may be merely interested in securing a place to leave his vehicle, or he may also wish to secure its safety. It is only reasonable to require the owner of the vehicle to use reasonable measures to insure the acceptance of responsibility by the operator of the parking lot if the added burden of bailment is desired by the owner.

In **Ins. Co. v. Constantine, 144 Oh St, 275,** it is stated in. the syllabus:

"Whether the relationship between a driver who offers. and a parking lot operator who accepts a motor vehicle for the purpose of parking, is that of bailor and bailee or of lessor and lessee, depends upon whether the parking lot operator assumes control over and custody of such vehicle,. or simply grants permission to park the vehicle at a designated place upon the parking lot."

The judgment of the Court of Common Pleas in rendering final judgment for the Defendant is affirmed.

ROSS, PJ, HILDEBRANT & MATTHEWS, JJ, concur in syllabus, opinion & judgment.